IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MOHAMMAD K. PARASHKOOH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1709 (RDA/WBP) |
| ) | |
| KENNETH PLATEK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Acting Director of the National Vetting Center Kenneth Platek and Secretary of State Marco Rubio,[1] Motion to Dismiss, or in the Alternative, For Summary Judgment (the "Motion"). Dkt. 10.[2] This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 11), and Plaintiffs' Opposition Brief (Dkt. 13), this Court GRANTS the Motion for the reasons that follow.

---

[1] When this case was filed, the Secretary of State was Anthony J. Blinken, and the Acting Director of the National Vetting Center was Daniel P. Callahan. Following the change in administration, Marco Rubio is now the Secretary of State, and Kenneth Platek is now the Acting Director of the National Vetting Center. Federal Rule of Civil Procedure 25(d) provides that "when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,] ... [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name .... The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

[2] Defendants filed two motions for extension of time which have not yet been resolved. Dkts. 8, 9. Those motions are now GRANTED.

## I. BACKGROUND

### A. Factual Background[3]

Plaintiffs Mohammad K. Parashkooh, Darya A. Abarghouei, Yazdan N. Nouri, Rozhina Taghdimi, Sohrab H. Nezhad, Fataneh T. Farahani, Saba S. Mehr, Bahareh Tavasoli, Farzan Cheraghiyan, Parisa Yazdanian, and Majid Erfani[4] are Iranian national students and derivative beneficiaries who have been accepted into programs at universities in the United States. Dkt. 1 ¶ 1. Plaintiffs are seeking F and/or J category nonimmigrant visas. *Id.* ¶ 1, 3-4. Plaintiffs each filed their nonimmigrant visa applications and were interviewed by consular officers at various U.S. embassies. *Id.* ¶ 2. After their interviews, Plaintiffs were given Section 221(g) non-final refusals and placed into further administrative processing. *Id.* At the time of their Complaint, Plaintiffs had been waiting anywhere from 10 to 20 months for updates on their visas. *Id.* Without their visas, Plaintiffs are in jeopardy of losing their positions as students at their respective American universities. *Id.* ¶ 1.

In reliance on these allegations, Plaintiffs plead four claims for relief. First, they allege that Defendants' delay in the adjudication of their visa applications violates the Administrative Procedure Act ("APA") under 5 U.S.C. § 706. *Id.* ¶¶ 207-17. Next, Plaintiffs allege that that Defendants have unreasonably delayed the adjudications of Plaintiffs' visa applications in violation of 5 U.S.C. § 555(b). *Id.* ¶¶ 218-232. Third, Plaintiffs assert a violation of Section 706(a)(2) based on Defendants' alleged

---

[3] For purposes of considering Defendants' Motion, the Court accepts all facts contained within Plaintiffs' Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] At the time of filing, four additional Plaintiffs Reyhane Zare, Parisa Yousefi, Mehrdad Rezaie, Behname Haghgooei, and Shirin Baghaei, were parties to the suit. Dkt. 1. However, on January 20, 2025, Plaintiffs Zare, Yousefi, Rezaie, Haghgooei, and Baghaei filed a Notice of Voluntary Dismissal. Dkt. 14. In accordance with the stipulation, the Court hereby DISMISSES those Plaintiffs as parties to this case.

misuse of Section 221(g). *Id.* ¶¶ 233-37. Finally, Plaintiffs seek mandamus relief under the Mandamus Act, 28 U.S.C. § 1361, for the delay. *Id.* ¶¶ 238-49.[5]

## B. Procedural Background

Plaintiffs filed their Complaint on September 26, 2024. Dkt. 1. On December 2, 2024, Defendants filed a consent motion for extension of time to file their response, Dkt. 8, and, on December 9, 2024, Defendants filed a second motion for extension of time, Dkt. 9.

On December 16, 2024, Defendants filed the instant Motion to Dismiss, or in the Alternative for Summary Judgment. Dkt. 10. On December 13, 2024, Plaintiffs filed their response in opposition. Dkt. 12. Defendants did not file a reply brief.

On January 20, 2025, Plaintiffs Zare, Yousefi, Rezaie, Haghgooei, and Baghaei filed their Notice of Voluntary Dismissal. Dkt. 14.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-

---

[5] Although the Complaint sets out distinct APA and mandamus claims, courts have reviewed claims for unreasonable delay under the APA and mandamus claims together under the same standard. *See, e.g., Jahangiri v. Blinken*, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020); *see also South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) ("[C]laims of unreasonable delay can be properly addressed through a mandamus proceeding.").

3

matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1215 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

### III. ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(6) for failure to state a claim, or, in the alternative, for summary judgment under Rule 56(a). Dkt. 11 at 1. "Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *see also Zadeh v. Blinken*, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Accordingly, the Court must first evaluate Defendants' Motion first under Rule 12(b)(1) and, if the Court finds that there is no subject matter jurisdiction, the Court need not address Defendants' other arguments.

Defendants contend that Plaintiffs cannot establish a clear, non-discretionary duty for the U.S. Department of State (the "State Department") to re-adjudicate any non-citizen's visa application. *Id.* at 13. On the other hand, Plaintiffs allege that the State Department has a duty to adjudicate their visas, and that this duty has not been fulfilled by the issuance of the Section 221(g) notices. Dkt. 13 at 15-17. Judicial review of agency inaction is limited under both the APA and the Mandamus Act and, thus,

4

this initial issue is determinative of Plaintiffs' claims. As the Supreme Court held in *Norton v. Southern Utah Wilderness Alliance*, APA Section 706 claims, asking a court to "compel agency action unlawfully withheld or unreasonably delayed," may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed *Norton*'s prohibition on judicial review of APA Section 706 claims as a part of APA Section 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA Section 706 claim. *See id.* at 216 (affirming dismissal for lack of subject-matter jurisdiction where the plaintiffs' APA claim was not based on a discrete legal requirement); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing *Norton*'s holding as jurisdictional); *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").

The Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the Supreme Court's conclusion in *Norton* that "the only agency action that can be compelled under the APA is action legally required" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (internal citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and, as is the case under the APA, such a clear duty is a "threshold requirement[ ]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). In assessing whether a clear duty or a discrete, required agency action exists, courts look for a "clear indication of binding commitment," *Norton*, 542 U.S. at 69, in "the text of the relevant statutes and regulations," *Lovo*, 107 F.4th at 211. "[T]he presence of 'unmistakably

5

mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command . . . to hold that an agency is compelled to act." *Id.* (citing *Gonzalez*, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." *Id.* at 212.

Here, several statutory and regulatory provisions use mandatory language in obligating Defendants to take action on visa applications. The Immigration and Nationality Act (the "INA") requires that "all nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added). This provision constitutes a requirement that consular officers review and adjudicate visa applications. *Lovo*, 107 F.4th at 211. However, the INA does not clarify what particular discrete action satisfies the requirement that an application be "reviewed and adjudicated." 8 U.S.C. § 1202(d). As asserted by Plaintiffs, various implementing regulations provide some degree of clarity here. 22 C.F.R. § 41.121(a) requires that, when a visa application has been executed, "the consular officer *must* issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly provides that consular officers may discharge their duties by refusing a visa. 22 C.F.R. § 41.121(a) specifically provides that a Section 221(g) refusal constitutes a qualifying refusal, stating that "nonimmigrant visa refusals must be based on legal grounds such as . . . INA [Section] 221(g)." The State Department Foreign Affairs Manual further clarifies, "[a] refusal under INA [Section] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Defendants here have already taken the discrete action required of them by issuing Section 221(g) notices of refusal for administrative processing and thus have satisfied their obligation to adjudicate the visa applications. After a refusal, such as a Section 221(g) refusal for administrative processing, has been issued, no further discrete action is required under the INA, 22 C.F.R. § 41.121(a),

6

or any other pertinent statute or regulation. Put another way, "[i]n refusing Plaintiff[s'] applications under [Section] 221(g) after [their] interview[s] with consular officers, [Defendants] complied with the regulations governing visa adjudications. [Defendants] thereby discharged [their] nondiscretionary duty."[6] *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024). Thus, this Court lacks jurisdiction here.[7]

---

[6] Many courts, both within the Fourth Circuit, and in other circuits, have come to the same conclusion. *See Sarshartehran v. Rubio*, 2025 WL 1261787, at *6 (W.D. Va. May 1, 2025) (holding that after a Section 221(g) refusal, "there is no further discrete action consular officers must take to satisfy their obligations"); *Aslam v. Heller*, 2024 WL 3535389, at *6-7 (M.D.N.C. July 23, 2024) (holding that nonimmigrant visa refusals under INA Section 221(g) are a "discrete action" thereby "discharge[ing the defendants'] nondiscretionary duty"); *Farahani v. Laitinen*, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); *Turner v. Blinken*, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to [Section] 221(g)"); *Berenjian v. Blinken*, 2024 WL 3732451, *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject-matter jurisdiction); *accord Denisova v. Mayorkas*, 2024 WL 2043664, at *3-4 (W.D. Pa. May 8, 2024) (holding the same); *Conley v. United States Dep't of State*, 2024 WL 1640074, at *4-5 (D. Mass. Apr. 16, 2024) ("Because [the] defendants have acted on the visa application, they have not failed to take any legally required action. . . .").

[7] In Plaintiffs' Complaint and Opposition, Plaintiffs further cite 22 C.F.R. § 42.81 as providing a clear non-discretionary duty to further adjudicate the visa application beyond the Section 221(g) refusal. Dkt. 1 ¶¶ 10, 55; Dkt. 13 at 33. Section 42.81 and Section 41.121 are similar, but the former governs immigrant visas while the latter governs nonimmigrant visas like the F-1, F-2, J-2, and/or J-1 visas at issue in this case. Unlike Section 41.121 (with respect to nonimmigrant visas), Section 42.81 contains an additional provision—for immigrant visas—that, if a visa is refused pursuant to INA Section 221(g) and placed in administrative processing, and if the applicant "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). Regardless of whether this section creates a clear non-discretionary duty to recontact the applicant after refusing an immigrant visa under INA § 221(g), *see Parva v. Blinken*, 2024 WL 4042466, at *4 (D. Md. Sept. 4, 2024) (concluding that such a duty exists), it is not relevant here in the context of a *nonimmigrant* visa application, to which Section 42.81 does not apply. *See Turner*, 2024 WL 4957178, at *5 n.12 ("The [] visa that Plaintiffs seek here is a nonimmigrant visa that is not subject to 22 C.F.R. § 42.81(e).").

7

Seeking to avoid this conclusion and the clear weight of authority in this regard, Plaintiffs argue that the issuance of a Section 221(g) refusal does not satisfy the State Department's duty because the Section 221(g) refusal is not necessarily "final." Dkt. 13 at 8-15. This Court defers the question of whether a refusal under Section 221(g) is a "final adjudication," because this Court concludes that there is no *clear* mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused. Nothing in the regulations provide a "'specific, unequivocal command' for [the] State [Department] to issue a final, unreviewable decision." *Yaghoubnezhad*, 734 F. Supp. 3d at 102 (quoting *Norton*, 542 U.S. at 63); *see also Ramizi v. Blinken*, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); *Farahani*, 2025 WL 360833, at *4 (holding the same). Further, the absence of any finality requirement in 22 C.F.R. § 41.121(a) is telling because while the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused, 22 C.F.R. § 41.121(a). By refusing the visa applications, Defendants here have already taken this discrete, required agency action, and Plaintiffs have not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. *Norton*, 542 U.S. at 69.

In sum, the Court lacks jurisdiction over Plaintiffs' claims because Defendants have already satisfied their mandatory duties under the INA and implementing regulations by issuing Section 221(g) refusals for administrative processing, and there is no further discrete, required agency action that the Court could compel Defendants to take. Accordingly, Defendants' Motion will be granted.

## III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss for lack of subject-matter jurisdiction (Dkt. 10) is GRANTED; and it is

FURTHER ORDERED that the Motions for Extension (Dkts. 8, 9) are GRANTED; and it is

FURTHER ORDERED that Plaintiffs Zare, Yousefi, Rezaie, Haghgooei, and Baghaei are DISMISSED pursuant to the Notice of Voluntary Dismissal (Dkt. 14).

The Clerk is directed to forward copies of this Order to all parties and counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
June 18, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge